IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JULIE GEIBE,                           : Civ. No. 1:24-CV-1400
                                       :
                    Plaintiff          :
                                       :
        v.                             :
                                       : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,                       :
Commissioner of Social Security,[1]    :
                                       :
                    Defendant          :

## MEMORANDUM OPINION

## I.    Introduction

Julie Geibe filed a Title II application for a period of disability and disability insurance benefits on April 12, 2021. (Tr. 15). Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Geibe was not disabled from her alleged onset date of disability of March 29, 2021, through September 8, 2023, the date of the ALJ's decision. (Tr. 15).

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank Bisignano is substituted as the defendant in this suit.

Giebe now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II. <u>Statement of Facts and of the Case</u>

On April 12, 2021, Giebe applied for disability insurance benefits, citing an array of physical and mental impairments, including, *inter alia*, blurred vision, double vision, depression, diabetes, stage 3 uterine cancer resulting in that organ's removal, and high blood pressure. (Tr. 364). Giebe was 59 years old at the time of the alleged onset of disability, had at least a high school education, and had past employment as a nurse aide, office clerk, and administrative assistant. (Tr. 24).

With respect to these alleged impairments the record revealed the following: Giebe first reported blurry vision, along with eye pain and head

pain, in March of 2021. (Tr. 571).  Dr. Erik Ketels first diagnosed Geibe only with vision changes.  (Tr. 573).  But her symptoms apparently worsened, as shortly thereafter, Geibe was hospitalized for two days with bilateral retinal hemorrhages and exudates.  (Tr. 616).  MRIs of her spine showed marked bilateral foraminal narrowing at L5-S1.  (Tr. 593-95).

In April of 2021, Geibe reported blurry and double vision to Dr. Maxwell Stern at Pennsylvania Retina Specialists ("PRS").  (Tr. 613).  Dr. Stern diagnosed Geibe with branch retinal vein occlusion, type two diabetes with ocular complications, moderate non-proliferative diabetic retinopathy in both eyes, third nerve palsy, and nuclear sclerosis in both eyes.  (Tr. 614).  He also gave Geibe an ocular injection of aflibercept.  (Tr. 615).  Later that month, Geibe met with Dr. Anne Hayes at Lebanon Internal Medicine and reported feeling "terrible" due to continued eye and leg pain.  (Tr. 586-87).  Dr. Hayes diagnosed Geibe with bilateral retinal hemorrhages, type two diabetes mellitus with hyperglycemia, malignant neoplasm of endometrium, obesity, leg pain, and hypertension.  (Tr. 587-89).  Geibe consulted with Dr. Hayes again in May

2021, and reported right eye heaviness and swelling, as well as pain in both her legs and her groin. (Tr. 633).

Geibe continued to report vision problems, next to Dr. George Fava at PRS in November 2021. (Tr. 814). She described an inability to focus, a feeling that her right eye was "pulling," and numbness. (*Id.*). Dr. Fava recommended a retinal injection. (*Id.*). Later that month, Geibe underwent nerve conduction studies and an EMG at Hershey Medical Center, which showed evidence of L5-S1 chronic radiculopathy. (Tr. 866-69). In August of 2022, Geibe reported haloes and glare in her vision. (Tr. 954). Dr. Fava diagnosed Geibe with branch retinal vein occlusion with macular edema in the left eye, type two diabetes with ocular complications, moderate non-proliferative diabetic retinopathy in both eyes, and worsening nuclear sclerosis in both eyes. (Tr. 954). Dr. Fava noted that Geibe's third nerve palsy, as well as her eye pain and numbness, had resolved. (*Id.*).

It is against this factual backdrop that the ALJ conducted three hearings in Geibe's case, on April 18, 2022, February 3, 2023, and September 15, 2023. (Tr. 33, 66, 101). Geibe and a vocational expert

4

("VE") both testified at the April 2022 hearing. Geibe testified about her 2020 cancer diagnosis, her ensuing surgery, and the health problems that developed thereafter, particularly her vision issues. (Tr. 108-23). The VE also testified, classifying Geibe's past work and answering hypothetical questions about what occupations a person with Geibe's background and certain specific limitations could perform. (Tr. 124-30). At the second hearing, in February 2023, Geibe testified again, along with a medical expert ("ME") who also acted as the VE for that hearing. (Tr. 66-100). The ME testified first and discussed the details of Geibe's medical record, her progress, and prognosis. (Tr. 69-90). Geibe then testified about the changes to her vision and the medical advice she had been given about future management of her eyesight. (Tr. 90-100). At the final hearing, in September of 2023, both the VE and ME returned to testify. The ME testified about new medical evidence added to the record since his previous testimony. (Tr. 37-50). The ME recommended a limitation he had not before: that Geibe could not use a needle and thread. (Tr. 40). The VE then testified about the effect of that limitation on Geibe's hypothetical employment. (Tr. 41-55).

5

Following the third hearing, on September 28, 2023, the ALJ issued a decision denying Geibe's application for benefits. (Tr. 15-25). In that decision, the ALJ first concluded that Geibe met the insured status requirement through December 31, 2026. (Tr. 18). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Geibe suffered from one severe impairment: branch retinal vein occlusion with macular edema of the left eye. (*Id*.). At Step 3 the ALJ determined that Geibe did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 19).

Between Steps 3 and 4 the ALJ concluded that, from the alleged onset date of March 28, 2021, to February 1, 2023, Geibe retained the residual functional capacity to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: no postural limitations except no climbing ladders, ropes, or scaffolds; no exposure to unprotected heights, moving machinery parts, and driving; and visual limitations of no determining difference in shape and color of small objects, such as screws, nuts, or bolt, no bright sunlight but indoor lighting, including fluorescent lighting, is acceptable. She can read standard computer font, read normal book and newspaper print but not small print on medication bottles.

(Tr. 19-20).

In reaching this RFC determination, the ALJ made the following findings: the ALJ considered Geibe's reported, subjective symptoms, and found that "claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record [.]" (Tr. 20). The ALJ noted that Geibe had alleged significant limitations in her activities of daily living, such as difficulty reading computer screens and signing her name, being unable to focus, and needing assistance with written instructions, handling money, and cooking. (*Id.*). The ALJ explained that these allegations were belied by medical evidence showing, *inter alia*, good responses to VEGF injections, improvements in her branch retinal vein occlusion, and stable vision during an examination. (Tr. 21).

The ALJ next considered the medical opinions on record. He was persuaded by the opinion of Dr. Jeffrey Horwitz, MD, who opined that Geibe had limitations including no exposure to unprotected heights,

moving mechanical parts, or driving, she could not determine difference in shape and color of small objects, and she had certain lighting and reading restrictions related to her vision. (Tr. 21). The ALJ reasoned that Dr. Horwitz's opinion was consistent with the record and supported by objective examination findings. (*Id.*). He was not persuaded by the opinion of Dr. Joanna Deleo, who found the evidence insufficient to determine Geibe's limitations, noting Dr. Deleo did not have the benefit of certain medical records that were submitted after her opinion was drafted. (*Id.*). Nor was the ALJ persuaded by Dr. Ruth Arnold's opinion. Dr. Arnold opined certain postural limitations were necessary, but the ALJ concluded those limitations were not consistent with, *inter alia*, findings indicating Geibe had no long-term effects from her hysterectomy. (*Id.*). The ALJ was also unpersuaded by the opinion of Certified Physician Assistant ("PA-C") Rebecca Torquato. (Tr. 22). He concluded PA-C Torquato's opinion, that Geibe could not sit for long periods nor use a computer, was inconsistent with objective clinical examination findings, including vision examinations showing Geibe was capable of reading "normal size" computer font. (*Id.*).

8

Before advancing to Step 4, the ALJ explained that changes to Geibe's near and distance vision, as found by Dr. Horwitz at a February 1, 2023, examination, required changes to the RFC. (Tr. 22). The ALJ concluded that, for the period of February 1, 2023, to the date of the ALJ's decision, Geibe retained the residual functional capacity discussed above but with one additional limitation: that she "cannot thread a needle." (Tr. 22). Dr. Horwitz's opinion was that this additional limitation was necessary to account for changes to Geibe's depth perception, distance vision, and near vision. (*Id.*). The ALJ found this additional limitation was supported by and consistent with the evidence from Dr. Horwitz's objective examinations. (Tr. 22-23). The ALJ reconsidered all the medical opinions in light of this new evidence but ultimately did not change any of his earlier conclusions about these opinions. (Tr. 23).

The ALJ then found at Step 4 that Geibe could not perform her past work but, at Step 5, found that he could perform other jobs that existed in significant numbers in the national economy, such as machine feeder, utility worker, and industrial cleaner. (Tr. 25). Having reached these conclusions, the ALJ determined that Geibe had not met the demanding

showing necessary to sustain this claim for benefits and denied this claim. (Tr. 25).

This appeal followed. (Doc. 1). On appeal, Geibe challenges the adequacy of the ALJ's decision arguing it is not supported by substantial evidence. (Doc. 14 at 6-10). The appeal is now fully briefed and ripe for resolution. (Docs. 14, 16, 19). As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be affirmed.

## III.    Discussion

### A.    Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552,

565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Under this standard, we must look to the existing administrative record

to determine if there is "'sufficient evidence' to support the agency's

factual determinations." *Id.* Thus, the question before us is not whether

the claimant is disabled, but rather whether the Commissioner's finding

that he or she is not disabled is supported by substantial evidence and

was based upon a correct application of the law. *See Arnold v. Colvin*, No.

3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has

been held that an ALJ's errors of law denote a lack of substantial

evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913,

914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a

claim requires the correct application of the law to the facts"); *see also*

*Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope

of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536

("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we

must not substitute our own judgment for that of the fact finder." *Zirnsak*

*v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes her from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work,

considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are

jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

16

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings*, 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, in light of the entire record, whether the RFC determination is supported by substantial evidence. *Burns*, 312 F.3d 113.

17

### C. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations. *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir.2009). Our review of those determinations is deferential. *Id.* However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not credible." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted). An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence." *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted). As the Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms. 20 C.F.R.

§§ 404.1529, 416.929; SSR 16–3p. Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms in light of the entire administrative record. SSR 16-3p.

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated when considered in light of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's

symptoms and how they affect his or her ability to work. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p. Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### D. This Case Will Be Affirmed.

Geibe presents three arguments that the ALJ's decision is not supported by substantial evidence. As we will explain, none are availing, and we will affirm the ALJ's decision.

Geibe's first argument is that the ALJ failed to identify a significant number of jobs that she can perform.  The ALJ found that Geibe could perform three occupations: machine feeder (DOT 699.686-010, 1991 WL 678871), utility worker (DOT 529.686-034, 1991 WL 674724), and industrial cleaner (DOT 389.683-010, 1991 WL 673279).  (Tr. 25).  Geibe claims there are "obvious/apparent conflicts" between these jobs and her limitations.  She quotes from the narrative entries in the Dictionary of Occupational Titles ("DOT") for each of these three occupations, alleging certain details of these occupations are incompatible with her limitation to avoid work around "moving mechanical parts."  (Docs. 14 at 7-8, 19 at 2-3).[2]  Geibe alleges that the "ALJ noted that Plaintiff could not perform the job [sic] of machine feeder, utility worker, and industrial cleaner

---

[2] We note that, with respect to this argument, this portion of Geibe's reply brief is almost a word-for-word repetition of the brief in support. (*Compare* Doc. 14 *with* Doc. 19).  We write here to remind counsel that "[r]esponse, reply, and surreply briefs are intended to shed greater light on the substantive issues and address new arguments or nuances raised by opposing counsel; they are not for reiterating word for word one's prior argument."  *CSX Transp. Co. v. Novolog Bucks Cnty.*, 2006 WL 1451280, at *17 n.17 (E.D. Pa. May 24, 2006).

given that Ms. Geibe had to avoid moving machinery [sic] parts. (Tr. 20)." (Doc. 14 at 6).

But it is not necessary to look to narrative descriptions in the DOT to determine if an occupation involved moving mechanical parts, because the DOT states whether any occupation therein involves moving mechanical parts. The DOT is unambiguous that all three of these occupations do *not* involve moving mechanical parts. *See* 1991 WL 678871; 1991 WL 674724; 1991 WL 673279. Geibe's argument is therefore without factual support, and so is unavailing.

Geibe next claims that the ALJ erred by not considering her work history when considering her subjective evidence. (Docs. 14 at 8-9, 19 at 3-4). But the ALJ referenced Geibe's work history twice in his decision. (Tr. 18, 24). It is of no moment that those considerations do not immediately follow the ALJ's conclusion about Geibe's subjective symptom evidence in the text, because, as discussed above, we read the ALJ's decision as a whole. *Leslie*, 304 F. Supp.2d at 627. It is clear to us from a holistic reading of the decision that the ALJ considered Geibe's work history and simply found that it did not outweigh the objective

22

medical evidence. (Tr. 20-21). Additionally, Geibe fails to identify how the ALJ's alleged failure to explicitly discuss her work history caused prejudice. The burden is on Geibe to show how an error caused prejudice. *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014) (explaining that a claimant must show how an error affected the outcome of the case (citing *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) (collecting cases))). Without a showing of prejudice, any error here would be harmless. We conclude there is no error, and even assuming there was, no prejudice, in the ALJ's treatment of Geibe's prior work history.

Geibe's final argument is that, by having the ME testify before Geibe at one of her three hearings, the ALJ ran afoul of the Commissioner of Social Security's Hearings, Appeals, and Litigation Law Manual ("HALLEX"). (Doc. 14 at 9). She argues this order of testimony contravened HALLEX I-2-6-70(b), which provides that:

> The ME may attend the entire hearing, but this is not required. If the ME was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the ME on the record.

HALLEX I-2-6-70(b).

23

First, we note that the ME attended the entire hearing, in apparent satisfaction of this passage. (Tr. 68-100). It is true that, at the September 2023 hearing, the ME gave testimony before Geibe gave hers. (Tr. 69-90, 91-99). But nothing in the HALLEX prohibits this. The quoted HALLEX section above advises ALJs not of some inflexible order of operations, but rather that the ME should hear all pertinent testimony from the claimant. We conclude that goal was met here. The ME received and reviewed 42 exhibits, including all the medical records and disability related development records that existed at the time. (Tr. 70). The ME questioned Geibe during his own testimony, gave extremely detailed testimony on Geibe's medical record, and responded to comments by Geibe and the ALJ during Geibe's testimony. (Tr. 71-72, 73-76, 92-93). Even had the ME not demonstrated such familiarity with Geibe's case, Geibe has not identified any "pertinent testimony" that the ME did not hear or consider, and so has not shown that this order of testimony prejudiced her. As discussed, Geibe bears the burden of showing prejudice, and without it, any error is harmless.

24

Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case, and the decision will be affirmed.

## IV.    Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: June 3, 2025